[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated July 23, 1999, the plaintiff, Jack P. Kern commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel and filed a cross-complaint dated August 16, 1999. Both parties appeared with counsel on March 22 and March 27, 2001 and the plaintiff proceeded on his complaint. The parties presented testimony and introduced documentary evidence. The court, after hearing the testimony and reviewing the exhibits makes the following findings of fact.
The plaintiff married the defendant, whose maiden name was Cynthia Ann Pueschel, on May 30, 1981 in San Pedro, California. He has resided continuously in the State of Connecticut for at least twelve (12) months CT Page 14726 next preceding the filing of the complaint. All statutory stays have expired. The parties have two (2) children issue of the marriage: Jack William Kern, born January 3, 1984 and Sara Marie Kern, born September 1, 1988. No other minor children have been born to the defendant since the date of the marriage. The court further finds that neither party or their children have been the recipients of any aid from the State of Connecticut or any municipality thereof.
The plaintiff was born on March 30, 1954. He appears to be in good health. At the time of trial he was separated from the defendant and resided in an apartment in Tarriffville, Connecticut. He is employed full time as a software trainer for the Allied Group with offices located in Glastonbury, Connecticut. He has been with the same firm for the past 18 years. His gross weekly earnings amount to $1,356 with an average weekly bonus of $51. He received a bachelor's degree in 1976 from Rutgers. His educational background and experience has been in the field of engineering.
The defendant was born on September 7, 1958. She appears to be in good health. She resides in the marital residence at 5 Old Mill Lane in Simsbury, Connecticut with the parties two children. She is not gainfully employed outside of the home. She considers herself a mother and homemaker. She received a bachelor's degree in music from CalState Long Beach. She has also pursued various courses on a variety of subjects.
The parties met shortly before Labor Day in 1980 and became engaged on February 15, 1981. The parties and their children traveled frequently during the early years of the marriage as a result of the plaintiff's employment. They began experiencing problems shortly after their marriage. The plaintiff was disappointed in their sex life and the defendant felt angry and unfulfilled. She felt that the plaintiff was not helpful enough. They were in counseling. The defendant suffered from post-partum "blues". The plaintiff sought out the company of prostitutes and on one occasion solicited an undercover agent for which he was arrested. The defendant was aware of the arrest but decided to stay in the marriage. The defendant was sporadically employed having a variety of part time jobs. In 1992 the family moved to Connecticut. On occasion the plaintiff went on extended business trips which caused the defendant to be very unhappy. The plaintiff engaged in an extra-marital affair. There was some violence engaged in by both parties. The defendant's behavior at times bordered on the bizarre. In November of 1998 the plaintiff moved out of the marital residence. Based upon the totality of the credible testimony the court finds that both parties were responsible for the breakup of the marriage with the plaintiff being more at fault than the defendant. There was credible testimony that the plaintiff used significant amounts from monies he inherited from his family for the CT Page 14727 benefit of both parties and their children.
Based upon her education and experience the court finds that the defendant has an earning capacity of $400 per week. The Plaintiff's earning capacity is the amount he is currently earning.
The parties stipulated that the marital residence has a present fair market value of $189,000.
The court has considered all of the statutory factors concerning custody and visitation set out in Secs. 46b-56, 46b-56a and 46b-84. The court has further considered all of the factors in Connecticut General Statutes Secs. 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earning and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial orders set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. ALIMONY "COBRA" COVERAGE.
The plaintiff shall pay to the defendant periodic alimony in the amount of $250 per week for a period of two (2) years from the date of judgment and the sum of $175 per week for an additional eight (8) years. Said alimony shall be non-modifiable as to term. For income tax purposes said alimony shall be includable in the income of the defendant and excludable by the plaintiff. Said alimony shall also terminate upon the death of either party or the remarriage of the defendant. Further, it shall terminate if the defendant cohabits with an unrelated male for a period of three consecutive months. As additional periodic alimony the plaintiff shall pay one-half of the premiums incurred by the defendant to enable her to procure COBRA medical insurance coverage with the plaintiff's employer for a maximum period of three (3) years. The plaintiff's obligation to pay such premiums shall terminate upon the defendant obtaining employment whereby medical insurance is provided to her at no cost.
2. PARENTING PLAN.
The parties shall have joint custody of their minor children with their primary residence with the defendant. With respect to a parenting plan the parties have adopted the recommendations of the Family Relations Division September 21, 2000 which have previously been made orders of the court. Such orders shall remain in full force and effect.
3. CHILD SUPPORT. CT Page 14728
The plaintiff shall pay to the defendant the sum of $269 per week for the support of the two (2) minor children. Said amount is in accordance with the Connecticut Child Support Guidelines and is based upon the plaintiffs' net weekly income and a net weekly earning capacity of the defendant in the amount of $300.
4. MEDICAL INSURANCE AND UNREIMBURSED MEDICAL EXPENSES.
The plaintiff shall continue to maintain the minor children for medical insurance expenses as long as he has an obligation to pay child support. Any costs associated with the childrens' medical insurance shall be paid by the plaintiff. The plaintiff shall pay 54% of all unreimbursed medical expenses after the first $100 and the defendant shall pay the remainder. The parties shall "comply with Sec. 46b-84 of the Connecticut General Statutes.
5. LIFE INSURANCE.
The plaintiff shall maintain his current life insurance policy and shall name the minor children as irrevocable beneficiaries of the first $100,000 of death benefit until he no longer has an obligation to pay child support. Further, as long as he has an obligation to pay alimony to the defendant he shall name the defendant the irrevocable beneficiary of the next $75,000. At least annually, the plaintiff shall provide the defendant with proof that the policy remains in full force and effect.
6. TAX EXEMPTIONS.
For the calendar year 2001 and thereafter the plaintiff shall be entitled to claim the minor children for all tax purposes. However, in any year the defendant's gross income as defined in the Connecticut Child Support Guidelines equals or exceeds $30,000 then in each such year she is entitled to claim the oldest child for all tax purposes. The defendant shall, within 30 days after the close of each calendar year, provide the plaintiff with Internal Revenue Service form 8332 and any other documents necessary to enable him to claim the minor children as set forth herein.
7. MARITAL RESIDENCE.
Within thirty (30) days after judgment the plaintiff shall quit-claim all of his right, title and interest in and to the marital residence located at 5 Old Mill Lane, Simsbury, Connecticut to the defendant subject to the existing first mortgage which the defendant shall pay and indemnify and hold the plaintiff harmless therefrom. Within sixty (60) days after judgment the defendant shall pay to the plaintiff the sum of $20,000 together with a mortgage deed and note in the amount of CT Page 14729 $60,000.00 together with simple interest at the rate of 4% per annum. The defendant shall pay said mortgage within thirty (30) days after the occurrence of the earliest of the following events:
A. The sale of said property;
B. When the plaintiff's obligation to pay child support terminates;
C. The cohabitation by the defendant with an unrelated male for three (3) consecutive months;
D. The relocation of the defendant from the marital residence.
The defendant shall use good faith efforts to refinance the property so as to remove the plaintiff from any continuing liability on the existing first mortgage. "Good faith efforts" shall be defined as requiring the defendant to seek a refinance of the subject property one (1) year from the date of judgment and every two (2) years thereafter. Evidence of her efforts shall be furnished to the plaintiff.
8. AUTOMOBILES.
The shall shall retain his 2001 PT Cruiser free of any claims of the defendant and the defendant shall retain her 1993 VW Cabriolet free of any claims of the plaintiff.
9. OTHER PERSONAL PROPERTY.
The plaintiff shall retain the antique chairs, settee and clock presently in his possession.
10. BANK ACCOUNTS.
Each of the parties shall retain whatever bank accounts they may have in their respective names. Any joint bank accounts shall be divided evenly between the parties.
11. STOCKS, BONDS AND MUTUAL FUNDS.
The plaintiff shall retain his Waddell Reed account free of any claims by the defendant.
12. DEFERRED COMPENSATION.
The plaintiff shall retain his Allied Group account free of any claims by the defendant. CT Page 14730
13. ALL OTHER ASSETS.
The defendant shall retain her Pueschel Partnership interest free of any claims by the plaintiff.
14. LIABILITIES.
The plaintiff shall assume and pay the outstanding obligation to the Internal Revenue Service and indemnify and hold the defendant harmless therefrom. Each of the parties shall indemnify and hold harmless the other with respect to any other liabilities listed on their financial affidavits.
BY THE COURT
John R. Caruso, J.